# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| ERIC CHRISTOPHER DROEGEMEIER, | CV 19–14–M–DLC |
| Plaintiff, | ORDER |
| vs. | |
| WILLIAM P. BARR, Attorney General of the United States; KIRSTJEN M. NIELSEN, Secretary of the Department of Homeland Security; L. FRANCIS CISSNA, Director of U.S. Citizenship and Immigration Services; EDWARD A. NEWMAN, District Director of the Vermont Service Center, U.S. Citizenship and Immigration Services, | |
| Defendant. | |

Before the Court is the Motion to Dismiss of the Federal Defendants. (Doc. 13.) In this lawsuit, Plaintiff Eric Christopher Droegemeier ("Droegemeier") challenges the U.S. Citizenship and Immigration Services' denial of his I-130 Petition for Alien Relative, which he filed on behalf of his wife, Russian citizen Marina Droegemeier ("Marina"). At issue is whether the agency violated the Administrative Procedure Act ("APA") when it denied Droegemeier's petition on the ground that Droegemeier "has been convicted of a specified offense against a

minor," 8 U.S.C. § 1154(1)(A)(viii)(I)—more specifically here, of "an offense . . .

that involves . . . [a]ny conduct that by its nature is a sex offense against a minor,"

34 U.S.C. § 20911(7)(I).

## HISTORY AND PROCEDURAL BACKGROUND[1]

In early 1998, Droegemeier, an American citizen, was charged with one

felony count of "lewd act upon a child" and one felony count of "anal and/or

genital penetration by foreign object," with both charges relating to events alleged

to have occurred in 1996.  (Doc. 1-7.)  In March 2003—over five years later—and

in exchange for the dismissal of the felony charges, Droegemeier pled guilty to the

misdemeanor violation of California Penal Code 647.6(a), which prohibits

"annoy[ing] or molest[ing] [a] child under 18 years of age."  (Doc. 1-7 at 2.)  He

was sentenced to three years of probation.  On June 15, 2010, a California court

ordered that Droegemeier's guilty plea "be set aside and vacated and a plea of not

guilty be entered and that the complaint be, and is hereby, dismissed" pursuant to a

rehabilitative statute, California Penal Code § 1203.4.

Droegemeier married Marina on January 10, 2009 in Grand Junction,

Colorado.  (Doc. 1-3.)  Marina is a Russian citizen, born in 1986 in the Kabardino-

Balkar Autonomous Soviet Socialist Republic, located in the far southwest corner

---

[1] For purposes of this Order only, the facts alleged in the Complaint and presented in
Droegemeier's supporting documents are accepted as true.  *Hemi Grp., LLC v. City of New York*,
559 U.S. 1, 4 (2010).

of the former USSR, just north of Georgia. (Doc. 1-4.) Shortly after the wedding, the couple began seeking citizenship for Marina. Droegemeier filed a pro se Petition for Alien Relative, and Marina concurrently filed a pro se adjustment of status application. (Docs. 1 at 8 & 1-5.)

In 2010, the United States Citizenship and Immigration Services (the "Services") issued a Notice of Intent to Deny Droegemeier's petition on the basis of his prior conviction under California Penal Code § 647.6(a). (Doc. 1-5.) The Services wrote that this conviction "may render [him] ineligible to act as a petitioner" and that Droegemeier therefore "must submit" "[c]ertified copies of all existing police reports and court records relating to the offense"; "[a]ny existing trial transcripts"; "any other criminal, violent or abusive behavior, incidents, arrests, and/or convictions"; and "[t]he terms and conditions of [his] sentence, release, parole, [and/or] probation." (*Id.*)

Droegemeier filed a response, arguing that: (1) because California vacated his plea of guilt under California Penal Code § 1203.4, he had not been "convicted" of violating § 647.6(a); (2) violation of § 647.6(a) is not a "specified offense against a minor" and therefore is not grounds for denying his petition; and (3) even if Droegemeier had been convicted of a specified offense against a minor, his petition should be granted because he does not pose a danger to Marina. (Doc. 1-7 at 2–6.) He attached as criminal records the underlying criminal complaint

(listing the two felony counts upon which he was not convicted) and the check-box judgment form listing his crime of conviction and imposing criminal penalties. (Doc. 17 at 15–18.)  The Services rejected Droegemeier's arguments and denied his petition on June 10, 2011.  (Doc. 1-6.)

Droegemeier timely appealed the Services' denial of his petition to the Board of Immigration Appeals (the "Board"), making the same arguments previously made to the Services.  (Docs. 1 at 9, 1-8, & 1-9.)  The Board dismissed his appeal on March 10, 2017.  In response to Droegemeier's argument that he had not been convicted of a crime, the Board relied heavily on its 2017 decision of *In re Calcano de Millan*, 26 I. & N. Dec. 904 (BIA 2017), in which it held that relief under California penal code § 1203.3 does not render a conviction void for the purpose of determining whether a citizen may petition for a status change for an alien family member.  As for Droegemeier's contention that his offense was not a "specified offense against a minor," the Board referred to an earlier decision, *In re Introcaso*, 26 I. & N. Dec. 304 (2014), for the proposition that a petitioner bears the burden of proving, looking to the facts and circumstances of an underlying proceeding, that a conviction does not bar the filing of a petition.

## LEGAL STANDARD

Droegemeier's challenge is brought pursuant to the APA, which demands that this Court "hold unlawful and set aside agency actions, findings, and

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Ordinary administrative law principles, including the two-step *Chevron* test, govern challenges to the Board's construction of immigration statutes. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).[2]

Under *Chevron*, the Court must first determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984). The Court uses "traditional tools of statutory construction" to ascertain congressional intent. *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1187 (9th Cir. 2001) (en banc) (quoting *Chevron*, 467 U.S. at 843 n.9).

If, on the other hand, the statute is ambiguous or silent on the issue, the Court proceeds to step two of the *Chevron* test, where "the question for the court is whether the agency's answer is based on a permissible construction of the statute."

---

[2] This Court has been tasked with reviewing the Board's "determination of purely legal questions regarding the INA de novo" but also giving deference to the Board's "interpretation of immigration laws." *Chowdhury v. INS*, 249 F.3d 970, 972 (9th Cir. 2001); *accord Gonzalez Romo v. Barr*, __ F.3d __, 2019 WL 3808515 (9th Cir. Aug. 14, 2019) ("'We review the BIA's determination of purely legal questions regarding the Immigration and Nationality Act de novo,' with appropriate deference." (quoting *Kankamalage v. I.N.S.*, 335 F.3d 858, 861 (9th Cir. 2003)). The Court understands the cited cases to mean that it must first apply *Chevron* and second, if *Chevron* deference is unwarranted, review de novo.

*Chevron*, 467 U.S. at 843.  Review under step two is deferential; the Court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844.

## DISCUSSION

Congress passed the Adam Walsh Act ("AWA") "[t]o protect children from sexual exploitation and violent crime, to prevent child abuse and internet pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims."  Pub. L. No. 10-9-248, pmbl., 120 Stat. 587 (2006). The AWA overhauled federal law relating to sex offenses against children.  As relevant here, the AWA amended the Immigration and Nationality Act ("INA") by placing a new limitation on family requests for citizenship changes, providing that a citizen is not entitled to petition for a change in a spouse's immigration status if that citizen "has been convicted of a specified offense against a minor."  8 U.S.C. § 1154.  The amended statute cross-references another provision of the AWA, which defines "a specified offense against a minor" to include, as relevant here, "an offense . . . that involves . . . [a]ny conduct that by its nature is a sex offense against a minor."  34 U.S.C. § 20911(7)(I).

Droegemeier challenges the Board's determination that, absent discretionary relief, he was foreclosed from seeking a status change for Marina.  He argues that he has not "been convicted of a specified offense against a minor" because: (1) his

conviction was vacated; and (2) the offense at issue does not qualify as a "specified offense."

## I.     The Board's Construction of "Conviction"

Droegemeier and the Federal Defendants dispute whether the Board acted arbitrarily and capriciously in finding that Droegemeier was "convicted" of a crime when his conviction was later vacated under a rehabilitative statute.  The INA provides a statutory definition of "conviction," but it applies only to aliens:

> [t]he term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> (i)     a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii)    the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

The Board interprets the definition of conviction applicable to citizens, such as Droegemeier, to precisely track the statutory definition applicable to aliens.  *In re Calcano de Millan*, 26 I. & N. Dec. 904.[3]  The Board recognized that the INA

---

[3] Droegemeier does not dispute that, if he were an alien, he would remain convicted of a crime despite rehabilitation under California Penal Code § 1203.4.  Nor should he.  Clearly, Droegemeier "has entered a plea of guilty," and "the judge has ordered some form of punishment, penalty or restraint on [his] liberty to be imposed."  8 U.S.C. § 1101(a)(48)(A). This is not to say that an earlier conviction may always be considered; as the Board has noted, there may be constitutional reasons to find an exception to the statutory definition when a

"do[es] not provide a definition of the term 'conviction' that is specifically applicable to United States citizens in visa petition proceedings" because that the definition of "conviction" expressly applies only to aliens. *Id.* at 906. Finding the definition "ambiguous" as to its application to United States citizens, the Board found "no reason to apply a different interpretation of the term 'conviction' to United States citizens" than to nonresident and lawful permanent resident aliens. *Id.* It therefore concluded that United States citizens whose convictions are vacated under a rehabilitative statute should be treated as aliens are—that is, they "ha[ve] been convicted" of an offense for purposes of determining eligibility to file a petition under 8 U.S.C. § 1154(1)(A)(viii)(I). *Id.* at 906.

The Court is limited to considering whether the agency acted arbitrarily or capriciously in extending to citizens the statutory definition applicable to aliens. 5 U.S.C. § 706(2)(A). If the term "conviction" is, in fact, ambiguous as applied to citizens, the agency is entitled to heightened deference under *Chevron*, meaning that its decision must be upheld unless the Court finds that its construction of the term is not "permissible." *Chevron*, 467 U.S. at 843.

Droegemeier contends that the phrase "with respect to an alien" in § 1101(a)(48)(A) renders the meaning of the term "conviction" unambiguous with

---

conviction is vacated for reasons other than rehabilitation. *See In re Adamiak*, 23 I. & N. Dec. 878, 879 (2006).

respect to a U.S. citizen. Droegemeier convincingly argues that, under the common tools of statutory construction, the express reference to aliens suggests that Congress did not intend for the same definition to apply to citizens. *See Longview Fibre Co. v. Rassmussen*, 980 F.2d 1307, 1312–13 (9th Cir. 1992) ("[W]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." (quoting *Raleigh & Gaston Ry. Co. v. Reid*, 80 U.S. 269, 270 (1871))). However, while the Court agrees that § 1101(a)(48)(A) does not extend to citizens, it does not follow that the inapplicability of a statutory definition renders the definition of the same term unambiguous as to individuals outside the scope of the statute.

Indeed, the Board did not disagree that, on its face, § 1101(a)(48)(A) applies only to aliens. It found that, because the term "conviction" is ambiguous, it must determine how to apply it to citizens. Applying the definition applicable to aliens under § 1101(a)(48)(A) served treble goals of "provid[ing] a uniform definition"; serving the "purpose of the Adam Walsh Act 'to protect children from sexual exploitation and crimes'"; and ensuring "consisten[cy] with guidelines set forth by the Attorney General regarding the implementation of SORNA, which is title I of the Adam Walsh Act." *In re Calcano de Millan*, 26 I. & N. Dec. at 907 (citations omitted).

The Court agrees that it is ambiguous whether a citizen's conviction remains a conviction for purposes of the INA and AWA even after it is vacated under a state rehabilitative statute. As the Board reasoned in *In re Calcano de Millan*, "although the term 'conviction' is commonly used in legal parlance, it lacks a single common meaning." *Id.* at 906 (collecting cases). Setting aside § 1101(a)(48)(A), the Board would still need to determine whether the rehabilitative statute applied to Droegemeier changed his conviction status for immigration purposes.

Notably, the Board has elsewhere "distinguished between situations in which a conviction is vacated based on post-conviction events, such as rehabilitation, and those in which a conviction is vacated because of a defect in the underlying criminal proceedings." *In re Adamiak*, 23 I. & N. Dec. 878, 879 (2006); *see also Pickering v. Gonzales*, 465 F.3d 263, 266 (6th Cir. 2006) ("[T]he BIA correctly interpreted the law by holding that, when a court vacates an alien's conviction for reasons solely related to rehabilitation or to avoid adverse immigration hardships, rather than on the basis of a procedural or substantive defect in the underlying criminal proceedings, the conviction is not eliminated for immigration purposes.").

Given the ambiguity in the definition of "conviction" applicable to residents, the Board's construction of the term is not impermissible. The weight of authority

supports the Board's construction. The Ninth Circuit, following "[c]ommon sense and . . . precedent," has clearly held that adverse immigration consequences may result from "a conviction that was vacated 'for equitable, rehabilitation, or immigration hardship reasons.'" *Prado v. Barr*, 923 F.3d 1203, 1206 (9th Cir. 2019) (quoting *Nath v. Gonzales*, 467 F.3d 1185, 1189 (9th Cir. 2006)).

Droegemeier has not brought to the Court's attention any case in which a court held that a state rehabilitative statute, such as California Penal Code § 1203.4, prevents the federal government from considering a prior conviction in any legal context. Instead, Droegemeier argues at length that the Board failed to give "full faith and credit" to the California state court proceeding vacating his conviction. 28 U.S.C. § 1738 ("The Acts of the legislature of any State . . . [and] judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State.").

Droegemeier overstates the effect of California Penal Code § 1203.4. In fact, the rehabilitative statute does not, without exception, "release[] [a defendant] from all penalties and disabilities" under California state law. Cal. Penal Code § 1203.4(a)(1). Rehabilitated defendants, like Droegemeier, may still be unable to possess a firearm, hold public office, or drive a car. Cal. Penal Code § 1203.4(a); Cal. Vehicle Code § 13555. California law simply does not provide that a

defendant granted relief under § 1203.4 is on the same footing as individuals who were never convicted of a crime. And, of course, California cannot tell the United States how to execute its laws. *See Prado*, 923 F.3d at 1206 ("[W]hether one has been 'convicted' within the language of [federal] statutes is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the laws of the state." (quoting *United States v. Campbell*, 167 F.3d 94, 97 (2d Cir. 1999))).

Finally, Droegemeier contends that the Board's understanding of the term "conviction" conflicts with the principle that statutes should, where possible, be construed to avoid significant constitutional problems. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). However, the Court cannot make out an "unconstitutional procedural and substantive due process violation" resulting from the Board's determination that Droegemeier's conviction still stands for immigration purposes. (Doc. 17 at 17.) To the degree that Droegemeier argues that the AWA does not apply to him because he was convicted before its enactment, that argument is foreclosed by Ninth Circuit law. *Gebhardt v. Nielsen*, 879 F.3d 980, 987 (9th Cir. 2018) (Because "the punitive aspects of the Adam Walsh Act do not outweigh its non-punitive purposes[,]" its application to individuals convicted prior to enactment "does not violate the Ex Post Facto Clause."). Nor can Droegemeier succeed on a claim that the denial of his petition violates a constitutional right to

live with Marina in the United States; his "strong interest in living with [his] family member[]" does not "override[] Congress' plenary power [over immigration]." *Id.* at 988.

The Board did not act arbitrarily and capriciously in determining that the Droegemeier's conviction carries adverse consequences even though he has received the benefit of partial rehabilitation.

## II.    Whether Droegemeier Was Convicted for the Commission of "a Specified Offense against a Minor"

The question remains whether Droegemeier's conviction is one that bars the petition he filed on Marina's behalf.  As to this point, Droegemeier's challenge is two-fold.  More generally, he argues that the Board acted arbitrarily and capriciously in its general analytical method by applying the circumstantial approach rather than the categorical approach.  Second, Droegemeier specifically contends that the Board violated the APA when it found that his offense of conviction is "a specified offense against a minor" such that he may not petition for a change in Marina's immigration status.

The Court cannot agree with Droegemeier that, as a matter of law, the Board must apply the categorical or modified categorical approach to answer whether a particular offense is "a specified offense against a minor."  34 U.S.C. § 20911(7). The statutory language is broad and ambiguous, and it seems, at first glance, that

the Board is entitled to considerable deference in construing that language. *Chevron*, 467 U.S. at 842–843.

However, the Court finds that the Federal Defendants are not entitled to dismissal on the grounds that the Board's interpretation of the AWA and INA is permissible. *Id.* First, Board's method of applying the circumstantial approach in the underlying administrative proceeding is based in a misunderstanding of the precedent it cited for support. *See Motor Vehicle Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 53 (1983) (creating "reasoned decisionmaking" standard). What is more, the Board's application of the circumstantial approach prevented it from seeing what is clear enough in the relevant statutory provisions themselves: Droegemeier's conviction does not fall under the AWA. Thus, while the relevant statutes are seemingly ambiguous, they do not permit the construction given by the Board. *Chevron*, 467 U.S. at 843 n.9 ("If a court, in employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

In denying Droegemeier's appeal, the Board devoted one paragraph to Droegemeier's argument that his California misdemeanor conviction does not constitute a conviction for a "specified offense against a minor." As relevant to this case, a "specified offense against a minor" is one "that involves," in relevant

part, "[a]ny conduct that by its nature is a sex offense against a minor." 8 U.S.C. § 1154; 34 U.S.C. § 20911(7). The Board wrote that "[g]iven the broad category of offenses that Congress identified in in invoking the protections afforded by the Adam Walsh Act, we conclude that an offense in violation of California Penal Code § 647.6(a) *can* constitute conduct that by its nature is a sex offense against a minor." (Doc. 1-10 at 3 (emphasis added).) Citing its decision in *Introcaso*, the Board reasoned that an "adjudicator may properly examine the circumstances of a crime" and that Droegemeier "bore the evidentiary burden to establish that his offense did not bar approval of the visa petition," a burden that the Board found unmet in this case. (*Id.*)

Because the reasoning in Droegemeier's own administrative proceeding is minimal, the Court looks to *Introcaso*, the case cited as precedent. There, the Board held that § 20911(7)(I) "contain[s] circumstance-specific language that invites inquiry into the underlying facts or conduct of a conviction to determine whether it is for a disqualifying offense." 26 I. & N. Dec. at 309. To determine whether a state conviction qualifies as an offense "that involves" "conduct that by its nature is a sex offense against a minor," the Board applies "a circumstance-specific inquiry, rather than . . . the categorical approach," looking beyond the elements of the statute of conviction to "the underlying conduct, as well as the minority of the victim." *Id.* at 309–10.

Droegemeier raises the threshold question of whether the Board may, consistent with the APA, apply the circumstantial approach to find facts outside the record of the underlying state court proceeding. He contends that the Board was required to apply the categorical approach to analyze his state conviction. "In the context[] of immigration law . . . , courts usually apply a categorical, or modified categorical approach to determine whether the crime of which the defendant was convicted meets the statutory requirements to have immigration consequences . . . , rather than allowing examination of the underlying facts of a crime." *United States v. Mi Kyung Byun*, 539 F.3d 982, 990 (9th Cir. 2008). "Th[e] categorical approach is in contrast to the circumstantial or case-by-case method that requires the district court to inquire into the facts of the particular case." *United States v. Mendez*, 992 F.2d 1488, 1490 (9th Cir. 1993). Under the categorical approach, a court "examin[es] only the statutory definition of the crime to determine whether the state statute of conviction renders an alien removable under the statute of removal." *Mielewczyk v. Holder*, 575 F.3d 992, 994 (9th Cir. 2009).

A slight variation, the "modified categorical approach," applies where "the state statute of conviction is broader than the generic federal offense and is also 'divisible,' meaning that it 'comprises multiple, alterative versions of the crime,' at least one of which 'correspond[s] to the generic offense.'" *Alvarado v. Holder*, 759 F.3d 1121, 1126 (9th Cir. 2014) (quoting *Descamps v. United States*, 570 U.S.

254, 262 (2013)).  Under the modified categorical approach, a court "consider[s] a limited class of judicially noticeable documents to determine whether the applicable alternative . . . was the basis of the conviction."  *United States v. Gonzalez-Monterroso*, 745 F.3d 1237, 1241 (9th Cir. 2014).

The third option, adopted by the Board in *Introcaso* and applied against Droegemeier in the relevant administrative proceeding, is the circumstantial approach, which focuses "on the specific way in which an offender committed the crime on a specific occasion," "look[ing] to the facts and circumstances underlying an offender's conviction."  *Nijhawan v. Holder*, 557 U.S. 29, 34 (2009).  The circumstantial approach might be applied to determine, for example: the amount of money involved in a crime of fraud, *Nijhawan*, 557 U.S. 29; whether the victim of a sex trafficking crime was a minor, *Mi Kyung Byun*, 539 F.3d at 993[4]; or whether the victim of an assault was a family member such that the assault constituted domestic violence, *Bianco v. Holder*, 624 F.3d 265, 272–73 (5th Cir. 2010); *but see Tokatly v. Holder*, 371 F.3d 613 (9th Cir. 2004) (holding that categorical approach informs whether an offense is one of domestic violence).  At least three circuits apply some form of circumstantial approach to determine whether a crime involves "[a]ny conduct that by its nature is a sex offense against a minor.  34

---

[4]  In *Mi Kyung Byun*, the Ninth Circuit expressly "dr[e]w no conclusion as to whether a non-categorical approach is permitted with regard to any facts other than the age of the victim."  539 F.3d at 994 n.15.

U.S.C. 20911(7)(I); *see Mi Kyung Byun*, 539 F.3d 982; *United States v. Price*, 777 F.3d 700 (4th Cir. 2015); *United States v. Dodge*, 597 F.3d 1347 (11th Cir. 2010) (en banc).

The circumstantial approach may be triggered when "[f]ocusing on the specific elements of [the state] statute" does not resolve the question of whether the state statute is equivalent to the federal provision. *Bianco*, 624 F.3d at 269. Thus, the Fourth Circuit has applied the circumstantial approach to determine under what theory the defendant was convicted of common-law assault and battery when the common-law crime encompassed both sexual and nonsexual violent offenses and could be pursued under widely disparate theories. *Price*, 777 F.3d at 705–06.

The approach properly applies only where its application does not conflict with "fundamentally fair procedures." *Nijhawan*, 557 U.S. at 41. The petitioner's burden of proving that the underlying offense is not a qualifying sex offense under the circumstantial approach appears to be without analogue in the federal courts. In the immigration context, the circumstantial approach may arise in civil deportation proceedings, where the burden falls on the government to prove, "by clear and convincing evidence," that an underlying offense falls under § 20911. *Id.* at 42; *accord Bianco*, 624 F.3d at 272–73. Somewhat closer to the Board's analysis are those criminal cases in which a sentencing court imposed sex offender registration requirements as part of a defendant's term of supervision upon finding,

using the circumstantial approach, that the defendant's offense of conviction is "a specified offense against a minor" triggering SORNA. *See Mi Kyung Byun*, 539 F.3d 982; *Price*, 777 F.3d 700; *Dodge*, 597 F.3d 1353. However, the Board is not similarly situated with a sentencing court, which is well-informed of the conduct giving rise to the crime for which the defendant is sentenced.

None of the courts developing and applying the circumstantial approach appears to have anticipated—let alone authorized—the Board's free-wheeling inquiry into the nature the underlying offense, unmoored from the elements of the crime itself. The Board, unlike the courts cited above, used the circumstantial approach not to determine whether Droegemeier's crime of conviction is a qualifying offense[5] but to determine whether Droegemeier at any point relevant to the underlying crime *may* have committed an offense triggering rejection of his petition. That approach, coupled with the requirement that Droegemeier somehow prove that his crime did not in actuality involve "[a]ny conduct that by its nature is a sex offense against a minor," essentially barred him from successfully filing a petition. Absent relitigation of the underlying offense, how could Droegemeier, who pled guilty to the misdemeanor crime, prove that his conduct does not fall under § 20911(7)(I)? *See Bianco*, 624 F.3d at 272–73 (authorizing use of

---

[5] On this point, the Board was equivocal, determining only that Droegemeier's crime of conviction "*can* constitute conduct that by its nature is a sex offense against a minor." (Doc. 1-10 at 3 (emphasis added).)

circumstantial approach to determine whether violent offense was a crime of domestic violence but holding "that the government has the burden to prove the domestic relationship by clear and convincing evidence"); see also *Moncrieffe v. Holder*, 569 U.S. 184, 201 (2013) ("The categorical approach serves 'practical purposes': It promotes judicial and administrative efficiency by precluding the relitigation of past convictions in minitrials conducted long after the fact.").

The cases cited in *Introcaso* simply do not support the Board's interpretation of them. And, while the Court takes no view of whether *Introcaso* itself is legally erroneous, the Board's analysis in the underlying administrative proceeding is foreclosed by the terms of the relevant federal and state statutes themselves.

As a matter of straightforward statutory interpretation, the Federal Defendant's arguments in favor of dismissal fail. Droegemeier's charge of conviction does not involve "conduct that by its nature is a sex offense against a minor." 34 U.S.C. § 20911(7)(I). Indeed, a conviction under California Penal Code § 647.6(a) does not, despite the misleading (and perhaps archaic) use of the term "molest" in the statute itself, demand a finding that wrongful sexual conduct occurred.

"The conduct element of § 647.6(a) can be satisfied by 'relatively minor conduct,' including a 'brief touching of a child's shoulder.'" *Menendez v. Whitaker*, 908 F.3d 467, 673 (9th Cir. 2018) (quoting *Nicanor-Romero v. Mukasey*,

523 F.3d 992, 1000 (9th Cir. 2008). While the criminal statue does require

"'unnatural or abnormal sexual interest or intent,' . . . this can be established

'merely by showing that the subject of an otherwise natural sexual interest was

under eighteen.'" *Id.* (quoting *Nicanor-Romero*, 523 F.3d at 1000–01). For this

reason, the Ninth Circuit has concluded that a conviction under § 647.6(a) is

neither a conviction for "a crime of moral turpitude," *Nicanor-Romero*, 523 F.3d at

1007–08, nor a conviction for a "sexual abuse of a minor," *United States v.*

*Pallares-Galan*, 359 F.3d 1088, 1099 (9th Cir. 2004).

The Ninth Circuit discussed at length the "catchall provision for 'conduct

that by its nature is a sex offense against a minor'" in *Mi Kyung Byun*, 539 F.3d at

988–90. In that case, a criminal defendant argued that she did not commit a

"specified sex offense against a minor" when she transported a minor to the United

States with the intent that the minor would work out of the defendant's night club

as a prostitute. *Id.* at 983–84, 988. The defendant was convicted of smuggling

aliens into the United States for purposes of prostitution, but the statute of

conviction was silent as to the age of the defendant's victims. The Court

determined that, although the defendant's conduct did not fall within a specific

category described in 34 U.S.C. § 20911(7), it fell under the catchall provision.

The Court's reasoning in *Mi Kyung Byun* was twofold. First, the

defendant's conduct closely mirrored that of a listed offense—"solicitation [of a

minor] to practice prostitution." *Id.* at 988; 34 U.S.C. § 20911(7)(E). Following ordinary rules of textual interpretation, general terms within a provision are construed as similar to specific terms found within the same provision; the defendant's conduct likely fell under the catchall provision because it was similar in kind and degree to solicitation of a minor. *Id.*; *see, e.g.*, *Gutierrez v. Ada*, 528 U.S. 250, 255 (2000) ("[A] word is known by the company it keeps."). Second, the Court looked at the statute more broadly, finding that the defendant's conduct qualifies her for designation as a "tier II sex offender," "a circumstance that supports the conclusion[] . . . that it is a 'specified offense against a minor.'" *Mi Kyung Byun*, 539 F.3d at 988–89.

On this point, too, *Mi Kyung Byun* is immediately distinguishable from the instant case. There, the crime of conviction was analogous to two provisions within the AWA. In contrast, no specific provision proscribes conduct which, while itself nonsexual and perhaps legal, nonetheless constitutes "a specified offense" solely because of the defendant's mental state.

As a matter of relatively simple statutory construction, the AWA is indifferent to offenses that are made illegal only because of the defendant's mental state. There is no specific provision addressing such an offense, and the text of the AWA and INA themselves mandate that wrongful *conduct* actually occur. The AWA demands that Droegemeier's petition be denied if he is "convicted" of an

offense that "involves," in relevant part, "[a]ny conduct that by its nature is a sex offense against a minor."  8 U.S.C. § 1154; 34 U.S.C. § 20911(7).  However, a conviction under California Penal Code § 647.6(a) stands even where there is no such "conduct" but only sexual interest or intent.

There is no theory under which a prosecutor could procure a conviction under § 647.6(a) only by proving conduct falling under § 20911(7)'s purview.  Nor could a reviewing court or agency look to the criminal records to find a discrete fact, such as the victim's age, clarifying that the offense qualifies as "a specified offense against a minor."  Thus, assuming that the Board generally may apply the circumstantial approach in its analysis, the circumstantial approach should not have been triggered in the first instance.  As the Board indicated in Droegemeier's administrative proceeding, a petitioner could be convicted under § 647.6(a) for an offense that does not involve "conduct that by its nature is a sex offense against a minor."  (Doc. 1-10 at 3.)  *See supra* n.5.

Because the Board's decision in this case is in direct conflict with the INA, as amended by AWA, the Board is not entitled to *Chevron* deference, and the Federal Defendants are not entitled to dismissal.

IT IS ORDERED that the Federal Defendants' Motion to Dismiss (Doc. 13) is DENIED.

DATED this 17th day of September, 2019.

Dana L. Christensen, Chief District Judge
United States District Court